UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:  DARRELL EUGENE REXRODE,
       THERESA LOUISE REXRODE, Debtors                  CASE NO. 03-18169

OPINION

On consideration before the court is a motion to lift the automatic stay, or, in the alternative for adequate protection, filed by Security Resources, LLC; a response thereto filed by the debtors, Darrell Eugene Rexrode and Theresa Louise Rexrode; and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157.  This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(G).

Directly related to this proceeding is an objection to confirmation of the debtors' Chapter 13 plan, also filed by Security Resources, LLC.  This Opinion addresses issues pertinent to that matter.

II.

In 1994, Darrell Eugene Rexrode ("Rexrode") began installing and repairing home and commercial security alarm systems under the name Port City Security, a sole proprietorship.  In 1998, Rexrode, along with another individual, incorporated BD Alarms, LLC, ("BD Alarms"), which also engaged in the business of selling, installing, and monitoring commercial and residential security alarm systems.  In 1999, Security Resources, LLC, (Security Resources), a

Connecticut limited liability company, agreed to extend to BD Alarms a revolving line of credit up to the amount of $250,000.00. To memorialize this transaction, the parties entered into the following series of contractual agreements, all dated December 10, 1999:

    (1)    A Revolving Credit/Term Note and Security Agreement entered into by BD Alarms as "Borrower" and Security Resources as "Lender."

    (2)    A Uniform Commercial Code financing statement reflecting BD Alarms as "Debtor" and Security Resources as "Secured Party."

    (3)    A Continuing Agreement of Guaranty and Suretyship (hereinafter "personal guaranty") executed by Rexrode wherein he personally guaranteed the debt of BD Alarms to Security Resources.

    (4)    A Non-solicitation and Non-disclosure Statement executed by Rexrode, individually, and on behalf of BD Alarms.

    (5)    An assignment of telephone numbers wherein BD Alarms assigned to Security Resources all right, title, and interest in the customer telephone numbers used by BD Alarms in connection with its business.

At some point in time, BD Alarms defaulted on its obligations under the revolving credit/term note by failing to make the required payments. Security Resources commenced legal action in the Circuit Court of Washington County, Mississippi, Cause No. CI-202-161. On August 20, 2003, judgment was entered in favor of Security Resources in the amount of $218,023.17, against BD Alarms and Rexrode, jointly and severally.

On December 31, 2003, Rexrode and his wife, Theresa Louise Rexrode, filed a joint Chapter 13 bankruptcy petition. Security Resources was listed in the schedules as an unsecured non-priority creditor holding a claim in the amount of $218,023.17. Security Resources filed a proof of claim asserting that it was a secured creditor, holding a claim in the amount of $185,021.38. On the proof of claim, the collateral securing the debt was reflected as "accounts."

Attached to the proof of claim were copies of each of the agreements noted hereinabove. Subsequently, Security Resources filed its motion to lift the automatic stay, as well as, its objection to the confirmation of the debtors' Chapter 13 plan[1]. A hearing was conducted, and the parties thereafter submitted their respective memoranda of law.

III.

In its motion to lift the automatic stay, Security Resources asserts that it holds a valid perfected security interest in all accounts and accounts receivable of BD Alarms and Rexrode, individually. Security Resources further alleges that there is no equity in the collateral to benefit Rexrode, and that the automatic stay should be lifted to allow Security Resources to take possession and control of these assets for application against the Rexrode debt. In his response, Rexrode agrees that Security Resources holds a valid security interest in any and all of the accounts and accounts receivable of BD Alarms. However, he contends that the accounts and accounts receivable that might be owned by him, individually, are beyond the reach of the above listed transactional documents. The primary issue before the court, therefore, is whether Security Resources holds a lien or security interest in the accounts and accounts receivable owned by Rexrode and/or Port City Security, the sole proprietorship which is owned and operated by Rexrode.

---

[1] Security Resources' objection to the confirmation of the Rexrodes' Chapter 13 plan is based on the allegation that it is a secured creditor, but is being treated as unsecured under the plan.

IV.

As set out hereinabove, the document entitled Revolving Credit/Term Note and Security Agreement reflects BD Alarms as the "Borrower" and Security Resources as "Lender." The unnumbered paragraph relating to the granting of a security interest provides, in part, as follows:

> Borrower hereby grants, assigns, and pledges to Lender a continuing security interest in and a right of setoff against, all of Borrower's Contracts (as defined herein "Contracts"), accounts, accounts receivable, revenue sharing proceeds from any now or hereafter outstanding contract, all books, records, insurance proceeds as a result of any losses incurred, computer records, including proceeds of (as defined in the Uniform Commercial Code for the State of Mississippi [sic[2]] to secure payment of the principal, interest, late charges, cost of collection, and other documents due under this Note to include Borrower's performance and observance of Borrower's other obligations under this Note (collectively the "Obligations").

The term "Contracts" is defined in the document as follows:

> "Contracts" means all Monitoring Contracts, Service Contracts, Lease Contracts, and all other contracts, agreements, and other similar obligations, as the same may from time to time be amended, supplemented, or modified, including all rights to: (1) receive money due and to become due thereunder or in connection therewith; (2) damages arising out of any breach or default in respect thereof, and (3) perform and to exercise remedies thereunder.

The next agreement examined by the court is Rexrode's "personal guaranty," wherein he individually guaranteed the obligations that BD Alarms owed to Security Resources. It provides, in part, as follows:

> In order to induce SECURITY RESOURCES, LLC, a Connecticut Limited Liability Company with its principal office at 1 West Main Street, Clinton, Connecticut, 06413, ("Lender") to make, renew, extend, or continue a loan or loans, to make future loans or to make or continue other extension of credit to BD Alarms, LLC, a Mississippi, corporation ("Borrower"), the undersigned ("Undersigned"), unconditionally guarantees and becomes surety for the full and timely payment, whether by declaration, acceleration or otherwise, of the Obligations of Borrower (being the Obligations under, and as defined in, that

---

[2] A closing parenthesis was apparently omitted after the word "Mississippi" in the original document.

certain Revolving Credit/Term Note and Security Agreement dated 12/10/99, by and between borrower and lender) including all costs and expenses of enforcement and collection thereof, including reasonable attorney's fees whether or not such Obligations shall hereafter be released or discharged (collectively, "indebtedness").

Rexrode personally obligated himself to pay the BD Alarms debt if called upon to do so[3]. In order to secure this guaranty, Rexrode conveyed a <u>conditional</u> security interest to Security Resources in all of his personal accounts. Paragraph 5 of the "personal guaranty" provides, in full, as follows:

> 5.  Undersigned [i.e. Rexrode], as security for the Indebtedness and the obligations of the Borrower, pledges to Lender and grants to Lender a security interest in and a right of set-off against, all monies, deposits, and other property of any kind owned by Undersigned or in which Undersigned has an interest and which are or shall be in the possession or control of Lender at any time for any reason.

The aforesaid language would initially appear broad enough to encompass any accounts or accounts receivable that Rexrode would own individually or through Port City Security. However, the final clause of Paragraph 5, with emphasis added, provides as follows:

> "...and which are or shall be in the possession or control of <u>Lender</u> at any time for any reason."

While curious, this language is clear and unambiguous[4]. The security interest in money, deposits, and other property owned by Rexrode or in which Rexrode has an interest does not attach unless the monies, deposits, and other property are in the possession or control of the

---

[3] A debt arising through operation of a personal guaranty would generally be dischargeable in an individual's bankruptcy absent unusual circumstances.

[4] Paragraph 13 of the Continuing Agreement of Guaranty and Suretyship provides that it is to be construed and enforced in accordance with Connecticut law. Connecticut follows the general rule that contracts should be interpreted according to their clear meaning. <u>Billy and Leo, LLC v. Michaelidis</u>, 867 A.2d 119 (Conn. App. Ct., 2005) (Where the language of a contract is clear and unambiguous, the contract is to be given effect according to its terms).

"Lender" Security Resources. The accounts and accounts receivable of Rexrode and/or Port City Security, which are the subject of this motion to lift the automatic stay, are in the possession and control of Rexrode. Accordingly, the court finds that although Rexrode personally guaranteed the obligation of BD Alarms, Security Resources does not hold a security interest in the accounts and accounts receivable which remain in the possession or control of Rexrode. But for this clause, a security interest would have been <u>created</u>, although not necessarily <u>perfected</u>, in favor of Security Resources in Rexrode's and/or Port City Security's accounts and accounts receivable. The court can only wonder whether the use of the word "Lender" was simply a drafting error. Regardless, the perfection of the security interest would have necessitated the recordation of a separate UCC financing statement specifically identifying the accounts and accounts receivable as being owned by Rexrode, individually, and/or Port City Security.

V.

The next agreement examined by the court is the Non-solicitation and Non-disclosure Agreement. This document was executed by Security Resources as "Lender," by BD Alarms as "Borrower," and by Rexrode, individually, as "Guarantor." The agreement provides in pertinent part as follows:

> If any Event of Default shall have occurred, which result in the acceleration of any of the loans by Lender, Borrower and Guarantors agree not to, for a period of 5 years from the date of such acceleration, for themselves, as an agent or employee, or on behalf of any person, association, partnership, or corporation either directly or indirectly, solicit or attempt to obtain business from, accept business from or do business with or service or indirectly aid or assist anyone else in the solicitation or acceptance of business from any of the customers or accounts included as part of the collateral pursuant to the loan agreement for the purpose of providing electronic security, guard, intercom, central vacuum, home automation, home theater, audio systems or related services (collectively, "the services"). This provision applies both to the customers and the residents or place of business occupied by such customers. In the event Borrower or Guarantors are contacted by such customers, they will inform such customers that they cannot provide services to such customers. Borrower and Guarantors agree to, in a polite manner, refer such customers to

6

      Lender or it Assignee with a positive recommendation.  In addition, Borrower and
Guarantors agree that they will never disparage the services, business or reputation of
Lender or its Assignee by making false or misleading statements to another person.

Security Resources asserts that Rexrode is in violation of the Non-solicitation and Non-disclosure Agreement by continuing to service and receive payments from Port City Security customers.  However, the agreement actually provides that Rexrode is prohibited, following default, from soliciting or accepting business from "any of the customers or accounts included as part of the collateral pursuant to the loan agreement..."  The collateral in which Security Resources holds a valid security interest are the accounts of BD Alarms.  If Rexrode is servicing only Port City Security customers, he is not in violation of the Non-solicitation and Non-disclosure Agreement.  However, if Rexrode is soliciting business from BD Alarms' customers or is attempting to have these customers switch their accounts to Port City Security, he would be violating the agreement.  The remedies afforded by the non-solicitation agreement provide that Security Resources may seek damages or injunctive relief in a court of competent jurisdiction without posting a bond.  If Rexrode has violated or is violating the non-solicitation agreement, the court will permit Security Resources to seek an injunction or other appropriate relief in this court upon the filing of proper pleadings.

VI.

The court will now shift its focus to the alternative theory, posited by Security Resources, that it enjoys a secured position because of the pre-petition judgment it obtained against Rexrode and BD Alarms, jointly and severally, in the amount of $218,023.17, in the Circuit Court of Washington County. The copy of the judgment reflects that it was signed by the Circuit Court Judge on August 18, 2003, and that it was stamped "received and filed" by the Circuit Clerk on

August 20, 2003. The court will assume that the judgment was properly entered thereafter on the judgment rolls.

The effect of an enrolled judgment is governed by §11-7-191 of the Mississippi Code, which provides that a judgment "shall be a lien upon and bind all the property of the defendant within the county where so enrolled, from the rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor..." Miss. Code Ann. §11-7-191 (1972). This language has been generally construed by the Mississippi Supreme Court to mean that an enrolled judgment is considered a lien on both the real and personal property of the judgment defendant located within the county of enrollment. Motor Securities Co., Inc. v. B.M. Stevens Co., 225 Miss. 361, 83 So.2d 177 (1955). However, the otherwise broad construction of the statute is restricted when the property involved is money or the right to receive payments.

In William Iselin and Co., Inc. v. Delta Auction and Real Estate Co., 433 So.2d 911 (Miss.1983), the Mississippi Supreme Court was called upon to determine if an enrolled judgment constituted a lien on the proceeds of an auction which had been interpled by the auctioneer for subsequent division among competing creditors. The court observed as follows:

> [N]otwithstanding the broad statutory language, our decisions have excepted intangible property, such as vouchers for the payment of money and the right to receive money, from being subject to a judgment lien without garnishment or other appropriate writ. See Simmons-Belk, Inc. v. May, 283 So.2d 592 (Miss. 1973) (promissory note); Bank of Monticello v. L.D. Powell Co., 159 Miss. 183, 130 So. 292 (1930) (decree allowing solicitor fee in partition cause was not subject to lien of enrolled judgment against the solicitor); R.F. Walden & Co. v. Yates, 111 Miss. 631, 71 So. 897 (1916) (voucher for payment of money); Bryan v. Henderson Supply Co., 107 Miss. 255, 65 So. 242 (1914) (choses in action)
> In addition, our cases have also consistently held that money is not subject to an enrolled judgment lien absent a seizure of the money. McPhillips Constr. Co. v. Carter-Murphy Constr. Co., 227 So.2d 302 (Miss. 1969) (no lien established against overbids in amount of $1,502.70 paid into registry of court where judgment creditors never attempted to

> garnish or attach the overbids); Henry v. Alexander, 131 Miss. 588, 94 So. 846 (Miss. 1923) (lien on money begins from seizure and not from date of judgment); Cahn v. Person, 56 Miss. 360 (1879) (same). The Cahn case explained the rationale for distinguishing between money and intangible property from other personal property held by the defendant in the following language: "Money, under the statute, is liable to seizure under execution, but the lien *begins* from the seizure, and not from the date of the judgment. The law does not affix a lien to things so fugitive, which circulate as currency, and are so impossible to identify." [Id. at 363].

William Iselin and Co., Inc. v. Delta Auction and Real Estate Co., 433 So.2d 911, 915 (Miss.1983).

The court affirmed the trial court which had concluded that all of the creditors in the case were unsecured even though two of the creditors had asserted that their enrolled judgments constituted liens on the auction proceeds.

The authorities cited within the above quotation provide that an enrolled judgment does not become a lien on money or intangible property of the judgment defendant until such time as the judgment creditor seizes the money or intangible property by way of a writ of garnishment or other appropriate writ. Indeed, perfection of the judgment lien is not effectuated until the seizure occurs.

There is no indication that Security Resources seized or garnished any accounts or accounts receivable of Rexrode and/or Port City Security prior to the filing of this bankruptcy case. Accordingly, the court finds that although Security Resources has an enrolled judgment, it does not have a perfected lien on the accounts and accounts receivable of Rexrode and/or Port City Security.

VII.

Based on the foregoing analysis, the court finds that Security Resources' motion to lift the automatic stay is not well taken as it relates to Rexrode's and/or Port City Security's accounts and accounts receivable.  However, Security Resources may seek injunctive or other appropriate relief in this court for any perceived violations by Rexrode of the non-solicitation agreement.

An Order will be entered consistent with this Opinion contemporaneously herewith.  A separate Order will be also entered dismissing Security Resources' objection to confirmation of the debtors' Chapter 13 plan.

This the 18th day of May, 2005.

/s/ DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE